UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

DEANNA S.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:17-cv-00936

# OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING THE COMMISSIONER'S MOTION FOR JUDGMENT ON THE PLEADINGS
(Docs. 10 and 13)

Plaintiff Deanna Sherman is a claimant for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act. She brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled and has moved for judgment on the pleadings. The Commissioner has cross-moved for the same.

After Plaintiff's application was initially denied by the Social Security Administration ("SSA"), Administrative Law Judge ("ALJ") George M. Bock found her ineligible for benefits based on his conclusion that she can perform past relevant work and is thus not disabled.

Plaintiff identifies two errors in the Commissioner's decision: (1) the ALJ failed to give good reasons for not according controlling weight to the opinion of Plaintiff's treating physician, and (2) the ALJ failed to develop the record and substituted his own judgment of the medical evidence for a physician's opinion.

Plaintiff is represented by Lewis L. Schwartz, Esq. Special Assistant United States Attorneys Joletta Friesen, Michelle Christ, and Dennis J. Canning represent the Commissioner.

I. **Procedural History.**

Plaintiff protectively filed an application for DIB on March 6, 2014, alleging a disability onset date of March 28, 2008.[1] The SSA initially denied her claim on May 13, 2014, and Plaintiff filed a timely request for a hearing on May 16, 2014. ALJ Bock held a hearing on May 12, 2016 at the Kansas City, Missouri Office of Disability Adjudication and Review, at which Plaintiff appeared with her attorney by videoconference. Plaintiff and Vocational Expert ("VE") Stella Doering testified at the hearing. On May 25, 2016, ALJ Bock issued a written decision finding that Plaintiff was not disabled, and Plaintiff timely filed a request for review with the SSA's Office of Disability Adjudication and Review Appeals Council (the "Appeals Council"). On August 29, 2017, the Appeals Council denied review of ALJ Bock's decision. The ALJ's decision thus stands as the Commissioner's final determination.

II. **The ALJ's Application of the Five-Step, Sequential Framework.**

In order to receive DIB benefits, a claimant must be disabled on or before his or her date last insured.[2] SSA regulations set forth the following five-step, sequential framework to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy

---

[1] In responding to the Commissioner's Motion for Judgment on the Pleadings, Plaintiff's counsel represents that "Plaintiff concedes that [her] disability did not begin until around the time of the first surgery on September 12, 2011. This is when Dr. Capicotto began opining consistently that [Plaintiff] is totally disabled." (Doc. 16 at 4.)

[2] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

2

that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citations omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

In this case, ALJ Bock concluded at Step One that Plaintiff had not engaged in any substantial gainful activity since her original alleged onset date of March 28, 2008. At Step Two, he concluded that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, status post-fusion in September 2011 and instrument removal in February 2013, and obesity. Although Plaintiff asserted migraines as one of her impairments, the ALJ found that Plaintiff's migraines were not a severe impairment because the evidence did not corroborate her reports concerning the severity and frequency of her symptoms, and because she did not begin receiving treatment for migraines until "well after her date last insured[.]" (AR 17.) ALJ Bock further found that Plaintiff's complaint of memory loss was insufficient to show a medically determinable impairment because there was no medical evidence reflecting that condition.

At Step Three, the ALJ evaluated Plaintiff's impairments and concluded that none of them met or medically equaled the severity of a listed impairment, including Listing 1.04 for disorders of the spine, because Plaintiff's "representative did not contend that the claimant's impairments meet or medically equal a listing." *Id.*

ALJ Bock determined that Plaintiff had the following Residual Functional Capacity ("RFC") at Step Four:

> [Plaintiff] had the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. [§] 404.1567(a), including the ability to lift and carry up to [five] pounds frequently and [ten] pounds occasionally, stand and/or walk up to [six] hours in an [eight] hour workday, and sit for up to [six] hours in an [eight] hour workday, with normal breaks. [Plaintiff] can never climb ladders, ropes, scaffolds, crawl, kneel or crouch, but can do all other postural activities on an occasional basis. [Plaintiff] must avoid loud noise levels, above a level [three], as defined by the Dictionary of Occupational Titles, and vibrations.

*Id.* at 17-18. In reaching this conclusion, he considered Plaintiff's reports of pain and symptoms as well as the objective medical evidence, opinions, and other evidence, and found that the record did not support the alleged severity of Plaintiff's conditions. Although Plaintiff alleged that she had to lie down for hours each day due to pain, the ALJ noted that she has three sons and was attending school full-time as of April 2011, which he found to be "inconsistent with her allegations and suggests that she is much more physically capable than alleged."[3] *Id.* at 19.

At Step Five, the ALJ determined that Plaintiff was capable of performing her past relevant work as a customer service representative. Alternatively, she could perform other jobs that exist in significant numbers in the national economy, such as document preparer, addressing clerk, and weight tester. On this basis, the ALJ concluded that Plaintiff was not disabled.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

In reviewing the Commissioner's decision, the court "'conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

---

[3] In a March 26, 2014 Disability Report, Plaintiff noted that she did not return to college following her surgeries due to her ongoing tailbone pain. (AR 129.)

4

accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). The Commissioner, not the reviewing court, resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for that of the Commissioner. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

### B. Whether ALJ Bock Failed to Give Good Reasons For Not Affording Controlling Weight to the Opinion of Plaintiff's Treating Physician.

Plaintiff argues that her case should be remanded for a new hearing because the ALJ failed to properly address the opinion of Plaintiff's treating physician, William Capicotto, M.D. She asserts that "the ALJ did not address Dr. Capicotto's opinion at all[,]" (Doc. 10-1 at 17), and thus failed to give good reasons for not crediting Dr. Capicotto's conclusions regarding Plaintiff's degree of disability. In response, the Commissioner notes that the ALJ cited the medical records that contain Dr. Capicotto's opinions and that the ALJ's conclusions are adequately supported by substantial evidence.

Although the Commissioner characterizes Dr. Capicotto as a workers compensation doctor, he is in fact a spinal surgeon who treated Plaintiff regularly for lower back and sacral pain from at least 2009 through 2015, and who performed four surgeries on Plaintiff's spine. As of 2010, he diagnosed Plaintiff with multiple spinal conditions, including lumbar disc herniation with myelopathy, spondylolisthesis, and intervertebral lumbar disc displacement. Dr. Capicotto's efforts to treat these conditions included the following surgeries: in September 2011, Plaintiff underwent spinal fusion surgery at L5-S1 and a separate implantation of hardware in the spine; in February 2013,

5

she had surgery to remove the hardware; and in April 2014, she had a coccygectomy to address persistent pain in her tailbone. Plaintiff visited Dr. Capicotto for follow-up appointments and treatment at approximately one- to two-month intervals between each of these procedures and following the coccygectomy.

SSA regulations define "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity" of the claimant's impairments, including "symptoms, diagnosis and prognosis," what the claimant "can still do despite impairment(s)," and the claimant's "physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Under the treating physician rule, an ALJ considering the opinion of a claimant's treating source first must decide "whether the opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]" 20 C.F.R. § 404.1527(c)(2).

> [I]f the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must explicitly consider the following, nonexclusive *Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.

*Estrella*, 925 F.3d at 95-96 (internal quotation marks omitted). "At both steps, the ALJ must give good reasons . . . for the weight [it gives the] treating source's [medical] opinion." *Id.* at 96 (alterations in original) (internal quotation marks omitted). However, "slavish recitation of each and every factor" is not required so long as "the ALJ's reasoning and adherence to the regulation are clear[.]" *Rivera v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 486, 494 (S.D.N.Y. 2019) (internal brackets omitted) (quoting *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).

The treating physician rule does not require the ALJ to defer to a physician's opinion on an issue reserved for the Commissioner's judgment, "including the ultimate

6

finding of whether a claimant is disabled and cannot work[.]" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine you are disabled."). However, the Commissioner's prerogative to make a determination regarding disability "does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited." *Snell*, 177 F.3d at 134 (remanding to Appeals Council "for a statement of the reasons on the basis of which [plaintiff's treating physician's] finding of disability was rejected"). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating physician's opinion "is a procedural error" that is harmless only if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed[.]" *Estrella*, 925 F.3d at 96 (citations omitted).

The ALJ's decision does not discuss the weight given to Dr. Capicotto's opinion and does not in fact identify Dr. Capicotto as Plaintiff's physician, much less a treating specialist with a long-term relationship with Plaintiff, although the ALJ cites Dr. Capicotto's clinical diagnosis of Plaintiff's lumbar disc herniation, spondylolisthesis, and intervertebral lumbar disc displacement. (*See* AR 16.) This constitutes some evidence that the ALJ at least considered Dr. Capicotto's notes. *See id.* at 16-19.

Dr. Capicotto's treatment records include "Disability Status" notes in which he described Plaintiff's level of impairment at almost every visit, rating it from "moderate" throughout 2010 and 2011, *see, e.g., id.* at 278, 255, 245, to "total, temporary" in 2013, *see, e.g., id.* at 347, 362, to "marked" in 2014, *see, e.g., id.* at 337. However, as the ALJ noted, "no doctor of record has opined on specific work limitations for the claimant, other than she said her doctor told her not to lift 20 pounds[,]" *id.* at 19, and Dr. Capicotto's notes contain no "medical opinion" regarding "what [plaintiff could] still do despite [her] impairments[.]" 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The ALJ did not seek to rectify this alleged deficit although he had a duty to do so. *See Moreau v. Berryhill*, 2018 WL 1316197, at *11 (D. Conn. Mar. 14, 2018) ("Where the record contains a treating physician opinion, but the opinion is incomplete, unclear, or inconsistent, the ALJ's duty

7

to develop the record requires the ALJ to seek additional information."); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history[.]").

Because the ALJ's decision neither accepts Dr. Capicotto's opinions as controlling, nor provides "good reasons" for concluding they are not, and because no weight is accorded to this treating specialist's opinions concerning Plaintiff's degree of disability, the treating physician rule was violated. Any error was not harmless because a "searching review of the record[,]" *Estrella*, 925 F.3d at 96, does not allow the court to determine the weight the ALJ ultimately accorded Dr. Capicotto's opinions. To the extent the Commissioner argues that Dr. Capicotto's opinions and treatment notes "provided no information on Plaintiff's ability to function," (Doc. 13-1 at 19), it is even more concerning that the ALJ developed an RFC for Plaintiff without any guidance from the treating physician most familiar with her conditions. Plaintiff's motion for remand on the grounds that the ALJ failed to comply with the treating physician rule is therefore GRANTED.

### C. Whether the ALJ Failed to Develop the Record and Improperly Substituted His Opinion of the Medical Evidence.

Plaintiff contends that the ALJ improperly determined her RFC without any basis in medical evidence and by substituting his own judgment of the medical evidence instead of contacting Plaintiff's physicians for further information. The Commissioner responds that the ALJ had no duty to contact any of Plaintiff's physicians and that the ALJ appropriately relied on the medical evidence in assessing Plaintiff's RFC.

An individual's RFC is "an assessment of [her] ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki*, 729 F.3d at 176 (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996)). In determining a claimant's RFC, an ALJ must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including "sitting, standing, walking, lifting, carrying, pushing, [or] pulling[.]" *Id.* (citing 20 C.F.R. §§ 404.1545, 416.945). The ALJ

8

must take "*all* of the relevant evidence in the case record" into account when analyzing a claimant's RFC, including "[m]edical history," "[r]eports of daily activities," "[r]ecorded observations," "[m]edical source statements," and "[e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment[.]" SSR 96-8p, 1996 WL, at *5; *see also* 20 C.F.R §§ 404.1545(a)(3), 416.945 ("We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations of your limitations from your impairment(s)[.]").

"While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (brackets and citation omitted), he may not substitute his "own lay opinion in place of medical testimony." *Selian*, 708 F.3d at 419 (finding ALJ improperly substituted her own criteria for diagnosis that were inconsistent with physician opinions). If the record evidence is insufficient to support an RFC determination, "the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record[.]'" *Id.* at 420 (quoting *Burgess*, 537 F.3d at 129). An ALJ's RFC assessment will be affirmed if it "affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous," while "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki*, 729 F.3d at 177.

In determining Plaintiff's RFC, ALJ Bock found that Plaintiff could walk, stand, or sit for up to six hours in an eight-hour work day, and that she could "never climb ladders, ropes or scaffolds, crawl, kneel or crouch." (AR 18.) The ALJ noted that Plaintiff's pain was exacerbated by "[a]ny repetitive bending, lifting, twisting, turning, pushing[,] and pulling[,]" *id.* at 16, consistent with Dr. Capicotto's findings in his treatment records. *See id.* at 242 ("[Plaintiff's] low back pain is aggravated with any repetitive mechanical activity such as bending, lifting, twisting and turning, pushing and

9

pulling[.]"). The ALJ's RFC includes restrictions beyond those recommended by Walter D. Hoffman, M.D., who evaluated Plaintiff on several occasions on behalf of the New York State Worker's Compensation Board. After examining Plaintiff on October 30, 2012 and again on June 18, 2013, Dr. Hoffman opined:

> The claimant would be able to return to employment with restrictions. She should not be expected to bend and pick objects up off of the floor. From knee height, she may pick up 20 pounds, and she may carry 20 pounds a short distance. She is also capable of pushing and pulling 20 pounds.

(AR 313; *see also id.* at 316).

The ALJ thus appears to have fashioned his own medical opinion of Plaintiff's limitations, finding that she could perform sedentary work with certain physical restrictions together with restrictions limiting exposure to loud noises and vibrations to avoid triggering Plaintiff's migraines.

Notwithstanding the fact that the ALJ's RFC determination is partially consistent with some portions of the medical evidence, his failure to give controlling weight to the opinion of Plaintiff's treating physician and his comment that "no doctor of record has opined on specific work limitations for the claimant," (AR 19), indicate that he impermissibly deduced Plaintiff's functional abilities and limitations based on his own analysis of the medical record. *See Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 259 (W.D.N.Y. 2018) (citation omitted) ("[I]n rejecting the remaining portions of [treating physician's] opinion, the ALJ did not rely on any opinion evidence from an acceptable medical source, and therefore determined Plaintiff's RFC based on his own interpretation of the medical record.").

Although in certain circumstances an "ALJ may make an RFC finding without treating source opinion evidence" if the record "contains some useful assessment of the claimant's limitations from a medical source[,]" *id.*, those circumstances are not present here. As a result, the court cannot discern how the ALJ reached conclusions about Plaintiff's functional abilities, and remand is required. *See id.* at 260 (remanding where "ALJ substituted his own medical opinion for Plaintiff's physical limitations"); *see also Murray v. Comm'r of Soc. Sec.*, 2019 WL 4263336, at *3 (W.D.N.Y. Sept. 10, 2019)

(finding record could not support RFC determination where treatment notes contained "bare medical findings" that did not address how claimant's impairments "affect[ed] her physical ability to perform work-related functions").

"[T]he ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004). "Because further findings" from a medical source regarding Plaintiff's functional limitations "would so plainly help to assure the proper disposition of [Plaintiff's] claim," *Rosa*, 168 F.3d at 83 (internal quotation marks and citation omitted), remand is appropriate here.

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for judgment on the pleadings (Doc. 10), DENIES the Commissioner's motion for the same (Doc. 13), and REMANDS for further proceedings consistent with this Opinion. On remand, the ALJ must analyze the treating physician opinions in the record consistent with the treating physician rule.

SO ORDERED.

Dated this 18th day of February, 2020.

Christina Reiss, District Judge
United States District Court